**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **H.S. on her own behalf and as** | ) | |
| **parent and next friend of her minor** | ) | |
| **child, J.S.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:08 CV 271** |
| | ) | |
| **HUNTINGTON COUNTY** | ) | |
| **COMMUNITY SCHOOL** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION and ORDER

Plaintiff H.S., on her own behalf and as a parent of her child, J.S., has filed a complaint (DE # 9) and a motion for a preliminary injunction (DE # 13) against defendant Huntington County Community School Corporation. Defendant opposed the injunction (DE # 26), and moved to dismiss plaintiff's complaint (DE # 32). This court referred both of these matters to Magistrate Judge Cosbey for a report and recommendation (DE # 19; DE # 38), which the court issued after a hearing (DE # 48; DE # 50).

Defendant objects (DE # 52; DE # 53) to the report and recommendation, and plaintiff has responded (DE # 54). For the reasons explained below, the court will overrule defendant's objections and adopt the report and recommendation—thus denying the motion to dismiss, and granting, in part, the motion for a preliminary injunction.

# I. BACKGROUND

Magistrate Judge Cosbey provided a thorough synopsis of the facts in his report and recommendation (DE # 50 at 4-9), and the parties submitted a stipulation of facts (DE # 46), so the court sees no need to exhaustively detail the events leading up to this lawsuit.

## A. Relevant Facts

Plaintiff is a parent of J.S., a third grade student at Horace Mann Elementary school, which is a part of defendant Huntington County Community School Corporation. (DE # 46 at 1.) As allowed by Indiana state law, defendant operates a religious "time release" program, enabling children to leave their normal classroom routines and receive religious instruction during the school day. IND. CODE § 20-33-2-19; (DE # 46 at 1-2; DE # 50 at 4.) Under this law, defendant has promulgated a policy allowing students to participate in religious time release programs for no more than 120 minutes a week. (DE # 46 at 1.) In defendant's district, only one organization currently provides such instruction—the Associated Churches of Huntington County (ACHC). (*Id.* at 2; DE # 50 at 4.)

Logistically, ACHC's program consists of bringing a trailer to various elementary schools, where their employees escort students from the school doors to the trailer, deliver a 30 minute religious-themed lesson, and return them to the doors of the school. (DE # 46 at 2-3; DE # 50 at 4-5.) These sessions take place once a week. (DE # 46 at 2.) During the trips to Horace Mann, the trailer is parked in the front parking lot,

roughly fifty feet from the school's front entrance, occupying several visitor parking spaces, and sitting within plain sight of one of the school's playgrounds. (DE # 50 at 5.) From the outside, the trailers display no religious iconography or markings. (*Id.*) Defendant sets no education guidelines or exercises any control over the content of ACHC's program whatsoever. (*Id.*) ACHC hires and employs its own teachers, and pays its own utility bills (at Horace Mann it plugs its trailer into an outside electrical outlet that is billed to ACHC directly). (*Id.* at 5-6; DE # 46 at 2-3.)

In order to participate in this program, defendant requires written permission slips, known as "request forms," from each student's parent. (DE # 46 at 2; DE # 50 at 6-7.) Students who do not provide a signed request form are kept in their normal classrooms while their participating classmates are released to ACHC's instructors. (DE # 46 at 3.) During this period, non-participating students do homework, read, or receive individual instruction. (*Id.*) In J.S.'s current grade, 97% of the students participate in ACHC's program. (DE # 50 at 4.)

In the Fall of 2008, J.S. was taken into the ACHC trailer and directly given a pamphlet advertising the program and containing a request form by an employee of ACHC, with the school's apparent consent and without plaintiff's permission. (DE # 46 at 3.) This practice has since stopped, and defendant claims it will now only distribute ACHC's information and request forms in the way that it distributes literature from any other outside group. (*Id.* at 3-4.)

Plaintiff and her child object to defendant allowing ACHC to place its trailer on school property for the purpose of conducting its religious teachings during school hours. (DE # 46 at 5.) J.S. is legally obligated to attend Horace Mann by Indiana law, *see* Ind. Code §§ 20-33-2-4; 20-33-2-5; 20-26-11-2, plaintiff must go to her child's school to attend school functions as a parent, and her child encounters ACHC's trailer at school. (DE # 50 at 6-9.)

ACHC claims that there is no reasonable way to relocate the trailer off of Horace Mann's property and continue to run the program in its current time allotment, and thus contends that granting an injunction in this case would end the organization's program.[1] (DE # 46 at 5-6; DE # 50 at 9.)

*B. Procedural Background*

After filing and amending her complaint, plaintiff moved for a preliminary injunction, requesting that the court enjoin defendant from allowing any release time program to take place on school property during school hours and alleging that this practice violated the Establishment Clause of the First Amendment of the U.S.

---

[1] Defendant makes three objections to the Findings of Fact made by Magistrate Judge Cosbey. (DE # 53 at 2-4.) Plaintiff accedes to the first two objections (DE # 54 at 1), and the court does not view them as particularly relevant. In its third objection, defendant objects to the court's finding that plaintiff's child "encounters the mobile classroom at school." Since the trailer sits in the school's front parking lot next to its main entrance, sometimes overnight, and once a week J.S. witnesses nearly his entire class march off to the trailer and then return a half hour later, the court overrules this objection.

Constitution.[2] (DE # 13; DE # 14.) This court then referred the matter to Magistrate

Judge Cosbey for a report and recommendation. (DE # 19.) Defendant responded to the

injunction motion (DE # 26), as did ACHC itself (DE # 34), which was granted leave to

file an amicus brief (DE # 28; DE # 33). Defendant then moved to dismiss the case,

arguing that plaintiff had no standing to challenge its time release program. (DE # 32.)

After this motion was fully briefed (DE #43; DE # 47) and the parties presented a list of

stipulated facts (DE # 46), the magistrate judge held a hearing on the motions, where

both sides made legal arguments (DE # 48).

Magistrate Judge Cosbey then issued his report and recommendation, asserting

that this court should deny defendant's motion to dismiss and grant plaintiff's motion

for a preliminary injunction. (DE # 50). Defendant timely filed its objections to the

report and recommendation (DE # 52; DE # 53), and plaintiff responded to those

objections (DE # 54).

## II. STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the

district court "shall make a de novo determination of those portions of the report . . . or

---

[2] The motion for a preliminary injunction sought to enjoin activities that plaintiff
presumed were occurring at the time, such as her belief that ACHC's trailer was using
school electricity. (*See* DE # 14 at 22.) Discovery has revealed that this belief was wrong.
Her motion also sought to prevent the school from participating in or promoting
ACHC's program in various ways. (*Id*.) Because defendant has avowed to no longer
give ACHC differential treatment in contrast with other outside organizations, and
ACHC does not use Horace Mann's electricity (DE # 46 at 2-4), these portions of the
injunction motion are now moot.

recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district

court has discretion to "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." *Id.*; FED. R. CIV. P. 72(b). As defendant

appears to object to all of the core legal conclusions made by the report and

recommendation (*see* DE # 52), the court will review Magistrate Judge Cosbey's report

de novo. *See* 28 U.S.C. § 636(b)(1)(C).

## III. DEFENDANT'S MOTION TO DISMISS: STANDING

Magistrate Judge Cosbey recommended that this court hold that plaintiff has

standing to bring this suit, and thus deny defendant's motion to dismiss the case for

lack of standing. (DE # 50 at 9-15.) In his analysis of the issue, he begins by reviewing

contemporary law dealing with standing in Establishment law cases (*id.* at 9-12), before

asserting that the standing issue "seemingly begins and ends with [*McCollum v. Board of

Education*, 333 U.S. 203 (1948)] and [*Zorach v. Clauson*, 343 U.S. 306 (1952)]," two cases

challenging religious time release programs where the Supreme Court found parents

had standing. (DE # 50 at 13.) In support of this conclusion, Magistrate Judge Cosbey

also analogizes this case to some additional Establishment Clause cases where courts

found plaintiffs had standing.[3] (*Id.* at 13-15.)

Defendant objects, contending that *McCollum* and *Zorach* make only "a passing

reference to the issue of standing." (DE # 53 at 4-5.)  Further, defendant asserts that

---

[3]  In summarizing Magistrate Judge Cosbey's reasoning, the court fails to do
justice to the extensive research and analysis the report and recommendation contains.

6

plaintiff has failed to meet its burden of showing "ongoing and irreparable injury," and contrasts plaintiff and J.S.'s viewing of ACHC's trailer with cases where the plaintiffs viewed obviously religious paraphernalia. (*Id.* at 4-8.) Plaintiff responds that the injury alleged in *Zorach* was, by any measure, far weaker and less distinct than the injury she and her child allegedly suffer. (DE # 54 at 2-4.) She also appears to allege that having to regularly confront the fact that defendant allows religious instruction to take place on school property during school hours, combined with the fact that Indiana law requires J.S. to attend the school, is the injury at issue, not viewing religious imagery or symbols. (*Id.* at 4.) Plaintiff has the burden of establishing standing. *Plotkin v. Ryan*, 239 F.3d 883, 885 (7th Cir. 2001).

### A. Applicability of McCollum and Zorach

To begin, the core of defendant's objection challenges the validity of the Supreme Court's holdings on standing in *McCollum* and *Zorach*. Defendant rightly notes that the court's language dealing with standing in those two cases is minimal. In *McCollum*, the court merely states, at the beginning of its opinion, that "[a] second ground for the [school board's] motion to dismiss is that the appellant lacks standing to maintain the action, a ground which is also without merit." *McCollum*, 333 U.S. at 206 (citing *Coleman v. Miller*, 307 U.S. 433, 443, 445, 464 (1939)). In *Zorach*, the court limited its discussion of the issue to a footnote, stating: "No problem of this Court's jurisdiction is posed in this case since, unlike the appellants in *Doremus v. Board of Education* [342 U.S. 429 (1952)], appellants here are parents of children currently attending schools subject to the

released time program." *Zorach*, 343 U.S. at 309-10 n.4. Obviously, these cases provide little analysis of this issue, and fail to even relate the standards they rely on to make their determinations.

*Zorach*'s citation to *Doremus* provides a lead though. *Doremus* dealt with a challenge of a New Jersey law requiring the reading of five bible verses at the start of each day in the state's public schools. *Doremus*, 342 U.S. at 430-31. One of the *Doremus* plaintiffs had a daughter in an affected high school, but because the daughter had graduated before the case was in front of the Supreme Court, the Court dismissed the appeal. *Id.* at 431-35. In doing so, the court laid out a legal standard for standing:

> we reiterate what the Court said of a federal statute as equally true when a state Act is assailed: 'The party who invokes the power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in [s]ome indefinite way in common with people generally."

*Id.* at 434 (quoting *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).

This language closely resembles the "injury in fact" portion of the contemporary test for standing, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (standing requires showing an injury in fact, that the injury must be fairly traceable to the defendant's action, and that the injury must be likely to be redressed by a favorable decision), which is the only portion of the standing requirement that defendant contests (*see* DE # 50 at 10 ("the entire issue of standing turns on whether [plaintiff] can show that an 'injury in fact' has occurred"). *Lujan* does further define "injury in fact" as requiring "an invasion of a legally protected interest" that is both "concrete and

particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotations and citations omitted). So the standard the Court apparently considered in *Zorach* was not completely up-to-date. But the fact that *Zorach* cited to a case—*Doremus*—that provided a standing doctrine, including a requirement of an injury in fact, that is similar to the modern test supports *Zorach*'s continued validity in regard to standing.

As does the fact that *Zorach* has continued to be cited for propositions relating to standing in parents' challenges to school policies. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 551 (1986) (citing *Zorach* in Establishment Clause challenge for proposition that "As this Court has repeatedly held, parents have standing to challenge conditions in public schools that their children attend."); *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 795 (9th Cir. 1999) (citing *Zorach* in Establishment Clause challenge for premise that "Parents have a right to direct the religious upbringing of their children and, on that basis, have standing to protect their right."); *Boster v. Philpot*, 645 F. Supp. 798, 807 (D. Kan. 1986) (citing *Zorach* for premise that "The Supreme Court has repeatedly held that parents have standing to challenge the conditions in public schools their children attend."); *Northwestern Sch. Dist. v. Pittenger*, 397 F. Supp. 975, 980 (W.D. Pa. 1975) (citing *Zorach* as one example of the "several cases involving challenges to various state laws under the establishment clause of the First Amendment, [where] the Supreme Court has held that parents of children presently attending schools affected by the laws in question had standing to raise the constitutional claim"); *Lee v. Nyquist*, 328

F. Supp. 710, 716 (W.D.N.Y. 1970) (citing *Zorach* and noting existence of standing in case where parents challenged law affecting racial demographics of schools); *see also Scenic Hudson Pres. Conference v. Fed. Power Comm'n*, 354 F.2d 608, 615 (2d Cir. 1965) (citing *Zorach* as an example where "the Supreme Court has not made economic injury a prerequisite where the plaintiffs have shown a direct personal interest").

The standard relied on in *McCollum* is not as easily discernable, as its holding on standing only cited to *Coleman v. Miller*, 307 U.S. 433 (1939), a case that dealt with an intra-governmental lawsuit between Kansas state legislators. *See McCollum*, 333 U.S. at 206 (citing *Coleman*, 307 U.S. at 443, 445, 464). But what is clear is that, similar to *Zorach*, *McCollum*'s holding on standing has been repeatedly cited in cases challenging public school policies. For example, in *School District v. Schempp*, 374 U.S. 203, 224-25 (1963), a case challenging state laws requiring the reading of religious material at the start of every school day, the Supreme Court noted the following:

> It goes without saying that the laws and practices involved here can be challenged only by persons having standing to complain. But the requirements for standing to challenge state action under the Establishment Clause, unlike those relating to the Free Exercise Clause, do not include proof that particular religious freedoms are infringed . . . The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain. *Cf. McCollum v. Board of Education*, *supra*.

*Schempp*, 374 U.S. at 224-25 n.9 (internal citations omitted).

This reasoning is reflected in *Doe v. School Board of Ouachita Parish*, 274 F.3d 289 (5th Cir. 2001), a post-*Lujan* Establishment Clause case that addressed the issue of

standing. In ruling that parents and their children had standing to challenge a Louisiana law allowing a period of prayer or meditation at the start of each school day, the Fifth Circuit cited *McCollum* in support of its statement that "the Supreme Court has repeatedly recognized the right of children and their parents to receive public education that is compliant with the Establishment Clause." *Ouachita Parish*, 274 F.3d at 292 (citing *McCollum*, 333 U.S. at 206).

Another somewhat recent decision, *Doe v. Porter*, 188 F. Supp. 2d 904 (E.D. Tenn. 2002), relied on *McCollum* in a similar way. In that case, the court cited *McCollum* in support of its statement that because the plaintiffs "have two minor children who currently attend elementary school in the . . . public school system [this] is sufficient to give [plaintiffs] and their children standing to bring" an Establishment Clause challenge. *Porter*, 188 F. Supp. 2d at 908. *Porter* presented facts far more severe than those alleged here—holding bible ministry classes on campus without parental consent or telling parents or students the classes were optional—but that court also noted that: "[i]t is well settled that public school students and their parents have standing to maintain a federal lawsuit challenging the constitutionality of a State law, regulation, or program adopted by public school authorities under the Establishment Clause without proving that particular religious freedoms are being infringed." *Id.* at 907-08 (citing cases).

Other Establishment Clause challenges have also relied upon *McCollum* in determining that various plaintiffs showed standing. *See Fleischfresser v. Dir. of Sch. Dist.*

*200*, 15 F.3d 680, 683-84 (7th Cir. 1994) (citing *McCollum* and noting "Courts have recognized that parents have standing as a result of their right to direct the religious training of their children."); *Roberts v. Madigan*, 921 F.2d 1047, 1051 (10th Cir. 1990) (*McCollum* "supports the notion that students and their parents may challenge unconstitutional actions in the public schools that directly affect the students"); *Herdahl v. Pontotoc County Sch. Dist.*, 887 F. Supp. 902, 904 n.1 (N.D. Miss. 1995) (citing *McCollum* and rejecting argument that parent lacked standing to challenge school policy allowing student groups to conduct and broadcast prayers, even when child was excused from participating); *Crockett v. Sorenson*, 568 F. Supp. 1422, 1424-25 (W.D. Va. 1983) (parents of child in school that taught optional bible class had standing, citing *McCollum*); *Goodwin v. Cross County Sch. Dist. No. 7*, 394 F. Supp. 417, 423 (E.D. Ark. 1973) (citing *McCollum* and finding standing for parent in case challenging religious activities in school). Given this sizeable quantity of precedents relying on the standing holdings of *McCollum* and *Zorach*, the court is comfortable acting likewise. It thus rejects defendant's contention that "[n]o valuable insight, nor precedential value can be gained or gleaned from" these cases' holdings on standing.

    *B. Standing Analysis*

    Defendant's objection assumes that *McCollum* and *Zorach* are inapplicable, and argues that plaintiff fails to show "ongoing and irreparable injury." (DE # 53 at 6-7 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 485-86 (1982).) While the court rejects this initial assumption, defendant's

argument does highlight the fact that plaintiffs raising Establishment Clause challenges nearly always suffer an atypical, non-physical and non-financial injury. Given that, the court believes the most apt way to determine whether standing exists is to compare the injury alleged by plaintiff — that her child is legally obligated to attend a school that permits private religious instruction of students on a trailer on school grounds during the school day — to other Establishment Clause cases.

The magistrate judge's conclusion that standing exists derived from his comparison of this case to *McCollum* and *Zorach*. And indeed, those comparisons strongly support plaintiff's contention. *McCollum* dealt with a challenge to the Champaign, Illinois school district's policy of allowing outside religious groups to come into school during regular school hours, and "substitute their religious teaching for the secular education" required by state law. *McCollum*, 333 U.S. at 205. The school district did not pay these religious teachers, and students were only allowed to attend these classes if their parents had requested such instruction in writing. *Id.* at 208-09. Students who did not participate "were required to leave their classrooms and go to some other place in the school building." *Id.*

In the court's view, the facts of *McCollum* compare closely to those here, with the main difference being that ACHC's religious teachers do not use defendant's school classrooms, but rather bring their own mobile classroom onto school property. Another, perhaps unimportant, contrast is that ACHC is the only organization providing religious instruction in the school district, while in *McCollum* "three separate religious

groups" taught the classes. *McCollum*, 333 U.S. at 208-09. Like here, the non-participating students in *McCollum* did not appear to encounter any religious symbols or imagery because of the programs. Thus, the court views the injury in *McCollum* as similar to that alleged by plaintiff.

*Zorach*, as noted by plaintiff, offers an even stronger comparison in her favor. (*See* DE # 54 at 3-4.) In *Zorach*, the court found standing to exist, despite the fact that New York City's program merely allowed its public schools "to release students during the school day so that they may leave the school buildings and school grounds and go to religious centers for religious instruction or devotional exercises." *Zorach*, 343 U.S. at 308. Again, the public schools required a written request from parents before releasing their children, and students were free not to participate and remain in class. *Id.* By any measure, the injury in this case is more severe than that in *Zorach*, where the religious instruction took place completely off of school property. *Cf. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 282-85 (5th Cir.1999) (parents and schoolchildren had standing to challenge program where clergy were brought into school to provide counseling, even though small minority of students were chosen to participate, students could decline, and plaintiffs' children had yet to be selected).

Other cases noted by the magistrate judge or defendant also offer favorable comparisons for plaintiff. In *Doe v. Crestwood*, 917 F.2d 1476 (7th Cir. 1990), the plaintiff challenged a decision by a municipal festival to allow a Catholic mass service to be held in a tent that would normally be used as a beer garden. *Id.* at 1478. The court stated that

14

the plaintiff "had standing" as he would stay away from the festival while the mass was happening, and, but for the mass, the tent would have been used as a beer garden. *Id.* Though the issue of standing does not appear to have been litigated in that case, apparently the plaintiff's avoidance of the mass, conducted in an area where he, presumably, could otherwise be enjoying a beer was enough to establish an injury in fact. Here, as noted by Magistrate Judge Cosbey, plaintiff's child is required to attend defendant's school by Indiana state law, contrasting with the plaintiff in *Doe* whose attendance at the festival was completely voluntary. Also, J.S. witnesses the effect of ACHC's program every week, when its trailer parks in the school parking lot and nearly all of his classmates go to participate. This is much more of an "ongoing" injury (*see* DE # 53 at 6), than the one festival mass described in *Doe.*

While the issue in *Books v. City of Elkhart*, 235 F.3d 292 (7th Cir. 2000), differs sharply from this case—the plaintiffs there challenged the display of a Ten Commandments monument on the grounds of a municipal building—the *Books* court found standing because the plaintiffs had to come into "direct and unwelcome contact with the religious display" to fulfill their legal and civic duties. *Id.* at 300. The court also noted that because the plaintiffs knew what was written on the monument, "merely walking behind it" and not looking at the words "will not eradicate the injury they allegedly suffered" by passing it. *Id.* at 300-01. From this court's perspective, this analysis rebuts defendant's claim that ACHC's trailer is inoffensive, even if plaintiff and her child have to encounter it when they are legally required to attend J.S.'s school,

15

because the trailer's outside has no visible religious imagery. (*See* DE # 53 at 7.) Like the plaintiffs in *Books* who were "aware of the words" on the monument, plaintiff and J.S. are equally aware that his classmates receive religious instruction during school hours on school property within ACHC's trailer.[4]

Finally, the court has difficulty seeing how the injury alleged here can be any less severe than those alleged in several of the cases challenging "moment of silence" type laws in various states. For example, in *Ouachita Parish*, Louisiana passed a law allowing school districts to set aside a time for students to pray or meditate at the start of school days. *Ouachita Parish*, 274 F.3d at 290-91. Certainly it could be argued that sitting in class for a moment while classmates meditate or pray does little to injure a student, at least in the traditional sense of the word, especially since public school students are not prohibited from voluntarily praying during the school day. *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 313 (2000) ("nothing in the Constitution interpreted by this Court prohibits any public school student from voluntarily praying at any time before, during, or after the school day"). But the Fifth Circuit held that the plaintiff in *Ouachita Parish* had standing, noting that "[i]mpairments to constitutional rights are generally deemed adequate to support a finding of 'injury' for the purposes of standing" and that "[t]he case is made stronger when the plaintiffs are . . . parents of students attending public schools, and thus are not merely 'concerned bystanders.'" *Ouachita Parish*, 274 F.3d at

---

[4] J.S. is especially aware of this, as ACHC took him into its trailer without plaintiff's permission, and gave him a promotional pamphlet (DE # 46 at 3-4; DE # 50 at 6-7)– an event that defendant avers will not happen with any future schoolchildren.

292 (citing and quoting cases). Similarly, a court in the Northern District of Illinois has recently rejected a standing argument in a case that claims Illinois's moment of silence law violates the Establishment Clause. *See Sherman v. Twp. High Sch. Dist. 214*, 540 F. Supp. 2d 985, 990-91 (N.D. Ill. 2008). Notably, the defendants in that case were represented by the same organization that filed ACHC's amicus brief in this case, and the description of the arguments made in that case sounds quite similar to the objections defendant now raises. *See id.* at 989-90; (*see* DE # 34; DE # 53 at 4-7.)

In sum, the court believes the vast weight of applicable precedent indicates that plaintiff has carried her burden of establishing standing. It therefore overrules defendant's objections to the first portion of the report and recommendation, and will deny defendant's motion to dismiss.

## IV. PRELIMINARY INJUNCTION

### A. Background

In his report and recommendation, Magistrate Judge Cosbey recommended that this court grant the motion for a preliminary injunction filed by plaintiff. (DE # 50 at 15-30.) Specifically, the magistrate judge believed that plaintiff had shown she and her child suffer irreparable harm, and that she is likely to succeed on the merits. (*Id.*)

Defendant objects to both of these core conclusions. First, defendant contends that plaintiff has merely alleged irreparable harm, not shown such harm. (DE # 53 at 8-9.) Second, defendant argues that plaintiff is not likely to succeed on the merits. (*Id.* at 9-16.) Specifically, defendant contests the magistrate judge's conclusion that this case is

closer to the facts of *McCollum* than *Zorach*. (*Id.* at 9-11.) It also asserts that its policy, allowing ACHC to bring its classroom trailer onto school property, serves secular purposes— meeting parental and "associational" desires, and ensuring student safety. (*Id.* at 11-13.) Further, the policy does not have the effect of endorsing religion, because the ACHC's trailer does not display any visible religious symbols or imagery. (*Id.* at 13-15.) Finally, defendant asserts that its program will suffer "irreparable harm" that outweighs any potential harm to plaintiff because relocating the ACHC trailers would increase the safety risk to students, potentially force the school to expand the time it sets aside for the program, and upset the parents who support the program. (*Id.* at 15-16.)

Plaintiff counters that case law supports her claim of irreparable harm. (DE # 54 at 5.) She also contends that the key fact in this case, that defendant allows ACHC to conduct its program on school property, makes this case far more similar to *McCollum* than *Zorach*. (*Id.*) Regarding her likelihood of success on the merits, she argues that there is no secular purpose for allowing ACHC to run its program on school grounds, that the fact that ACHC is actually teaching elementary school students religious material on school property during school hours clearly conveys a message of endorsement by defendant, and that the school corporation itself will not suffer any harm if the injunction is granted. (DE # 5-9.)

*B. Standards and Applicable Case Law*

Plaintiff has moved for a preliminary injunction enjoining defendant from allowing ACHC to park its trailer on school grounds during school hours for the

18

purpose of religious instruction, as part of defendant's time release program. (DE # 13.) In determining whether a situation merits a preliminary injunction, a district court conducts a two phase analysis. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085-86 (7th Cir. 2008) First, the threshold phase requires a party seeking the injunction to satisfy three requirements: (1) "that absent a preliminary injunction, it will suffer irreparable harm in the interim," (2) "that traditional legal remedies would be inadequate," and (3) "that its claim has some likelihood of succeeding on the merits." *Id.* at 1086 (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). If the moving party passes this threshold phase, the court conducts a balancing analysis. *Id.*

> In this second phase, the court, in an attempt to minimize the cost of potential error, *see Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 593-94 (7th Cir. 1986), "must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest,' " [*Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir.1986).] Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. [*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir.1992).] In so doing, the court employs a sliding scale approach: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."[*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir.1984)]; *see also Ty*, 237 F.3d at 895; *Abbott Labs.*, 971 F.2d at 12. Where appropriate, this balancing process should also encompass any effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the "public interest"). *Ty*, 237 F.3d at 895; *Roland Mach.*, 749 F.2d at 388. Taking into account all these considerations, the district court must exercise its discretion "to arrive at a decision based on a subjective

evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." *Lawson Prods.*, 782 F.2d at 1436.

*Girl Scouts of Manitou Council*, 549 F.3d at 1086.

Unlike the standing issue, the parties here have no dispute over the controlling precedents that govern this case. Both appear to agree that it is proper to compare the Supreme Court's "time release program" precedents of *McCollum* and *Zorach* to this case. Both also agree that the test put forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), is applicable. The court will thus consider both of these frameworks in determining whether to accept Magistrate Judge Cosbey's recommendation.

Under the *Lemon* test, "government action does not violate the First Amendment's ban on the establishment of religion if it has a secular purpose, if its principal or primary effect is one that neither advances nor inhibits religion, and if it does not foster an excessive government entanglement with religion." *Books v. Elkhart County, Ind.*, 401 F.3d 857, 862 (7th Cir. 2005) (*Books II*) (citing *Lemon*, 403 U.S. at 612-13; *County of Allegheny v. ACLU*, 492 U.S. 573, 592 (1989)). The "effect prong" of this test is reviewed under a "perception of endorsement" test, where the court determines "whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval." *Lynch v. Donnelly*, 465 U.S. 668, 690 (1984) (O'Connor, J., concurring); *see Freedom from Religion Found., Inc. v. City of Marshfield, Wis.*, 203 F.3d 487, 493 (7th Cir. 2000). "When [the court] find[s] that a reasonable person could perceive that a government action conveys the message that

religion or a particular religious belief is favored or preferred, the Establishment Clause

has been violated." *Freedom from Religion Found.*, 203 F.3d at 493.

*C. Threshold Phase*

The magistrate judge concluded that plaintiff satisfied the three portions of the

threshold test for a preliminary injunction. (DE # 50 at 17-31.) Defendant objects to two

portions of that conclusion— arguing that plaintiff fails to show irreparable harm or

that she is likely to prevail on the merits. (DE # 53 at 8.) Regarding irreparable harm,

defendant's argument is somewhat circular. It concedes that a First Amendment

violation, even for a short period of time, is "unquestionably irreparable injury." (DE #

53 at 8.) But it contends that "a mere allegation" cannot establish irreparable injury,

citing to *Doe by Doe v. Shenandoah County School Board.*, 737 F. Supp. 913, 916 (W.D. Va.

1990). (*Id* at 8-9.)

After reviewing *Shenandoah*, the court determines that defendant's citation to it is

disingenuous. The court there was simply indicating that a party with completely

unfounded or irrelevant allegations would not have shown an irreparable injury, and

thus determining whether there was such injury required the court to "make some

investigation into the plaintiff's likelihood of success." *Shenandoah*, 737 F. Supp. at 916.

Thus, the court there was merely noting how the various portions of the threshold

phase were interwoven. It did *not* hold that a plaintiff needs some formal judgment that

she has experienced a First Amendment violation to get past the threshold phase, as

defendant suggests. Indeed, were that the case, no plaintiff alleging an Establishment

Clause violation could ever get past the threshold phase, because in order to do so they would first need some preemptive legal ruling that their rights had been violated. The court rejects defendant's frivolous argument.

Defendant also argues that plaintiff does not meet the threshold phase's requirement that she show "some likelihood of succeeding on the merits." Notably, defendant fails to note the modifier "some" when making this objection. (*See* DE # 53 at 8.) Given that the time release program in *Zorach* (held completely off school grounds) was found to be constitutional, and the program in *McCollum* (held on school property) was not, this precedent alone could be enough to show "some" likelihood of success. Combined with the fact that, as the magistrate judge noted, several time release cases have emphasized the importance of the location of the religious instruction, (*see* DE # 50 at 23-24), then plaintiff has certainly shown "some likelihood" of succeeding on the merits. Accordingly, the court overrules defendant's objections to the magistrate judge's analysis of the threshold phase. The court holds that plaintiff has satisfied the threshold phase, and will thus proceed to the balancing phase.

D. *Balancing Phase*: *McCollum and Zorach*

After comparing this case to *McCollum* and *Zorach* and applying the *Lemon* test, Magistrate Judge Cosbey concluded that plaintiffs were likely to succeed on the merits of their claim. Defendant objects to the outcome of both these analyses.

First, defendant asserts that this case is closer to *Zorach* than *McCollum*, because the school in *McCollum* had "close cooperation" with the outside religious groups

teaching in its classrooms; the program in *Zorach* had no such cooperation. (DE # 53 at 9-10.) Plaintiff does not allege that defendant has close cooperation with ACHC, and indeed repeatedly states that its challenge rests on the basic facts that defendant allows religious instruction on school grounds during the school day. (DE # 54 at 5.) Thus, plaintiff essentially argues that defendant's lack of close cooperation doesn't matter.

The court is persuaded by Magistrate Judge Cosbey's excellent analysis of this issue, noting that *McCollum*'s core principle prohibited "the use of tax-supported property for religious instruction" and "the utilization of tax-established and tax supported public school system to aid religious groups to spread their faith." *McCollum*, 333 U.S. at 209-10; (DE # 50 at 22-23.) Further, defendant offers no rebuttal to the cases the report and recommendation cites, all of which note the importance of where a religious instruction program is located. (DE # 50 at 23-24.) Indeed, as Magistrate Judge Cosbey stresses (*id.* at 24), while courts have upheld religious time release programs held off of school grounds, *see Zorach*, 343 U.S. 306; *Pierce ex rel. Pierce v. Sullivan W. Cent. Sch. Dist.*, 379 F.3d 56, 60 (2nd Cir. 2004) (upholding an off site time release program); *Smith v, Smith*, 523 F.2d 121 123-24 (4th Cir. 1975) (upholding a released time program and distinguishing it from *McCollum* because it took place off school grounds), defendant cannot point to a program conducted on school property that has been held to be constitutional. Accordingly, the court agrees that the comparison of *McCollum* and *Zorach* with this case supports plaintiff's contention that she is likely to succeed on the merits of her case.

*E. Balancing Phase: The Lemon Test*

Regarding the *Lemon* Test, Magistrate Judge Cosbey concluded that defendant's program failed to survive any of the three prongs, especially the secular purpose and effect portions. (DE # 50 at 24-28.) Defendant objects to that conclusion in its entirety, and contends that its program passes the *Lemon* test.

First, defendant argues that allowing ACHC to teach its religious classes on school property satisfies the first portion of the *Lemon* test because it has a secular purpose, namely "accommodating parental desires," (DE # 53 at 11), and also notes that it satisfies a need to increase "student safety" (*id.* at 13). In addition, defendant argues, without citation to authority, that preventing "ACHC from coming onto its property" could violate the First Amendment's Free Exercise Clause, and claims that it is "remaining neutral" and acting with its own policies that allow outside groups to use school grounds. (*Id.* at 12-13.) Plaintiff responds that there is "simply no valid safety reason for allowing the religious instruction to take place on school grounds," and notes that the school's responsibility under Indiana law is to merely release students from school. (DE # 54 at 5-6.) Thus, safely transporting the students safely to and from the religious class is ACHC's concern, not defendant's. (*Id.* at 6.)

The governmental entity has the burden of proving a secular purpose under the *Lemon* test, *Books*, 235 F.3d at 304 n.8, though courts will defer to the government's stated purpose as long as it is not a "sham." *Books II*, 401 F.3d at 863. "The Supreme Court has held that government action lacks a valid secular purpose under *Lemon* only

when there is no question that the statute or activity was motivated wholly by religious considerations." *Id.* (internal quotation marks and citation omitted).

To begin, the court agrees that "accommodating parental desires" to have a religious time release program is not a reason to allow ACHC to conduct its classes on school property. There has been no evidence presented that parents specifically requested a program that occurred on school grounds, as opposed to somewhere nearby, as in *Zorach*. And defendant sets up a straw man in claiming that preventing ACHC from coming onto school property might violate the Free Exercise Clause. Allowing ACHC to merely come onto school property—to, for example, pick up students—is not the question. Instead, defendant allows ACHC to set up shop in the school parking lot and provide religious instruction to children during the school day.

However, the issue is closer with defendant's contention that its allowing the ACHC trailers on campus is designed to insure student safety. Plaintiff and the magistrate judge both note the school has no legal obligation to ensure the safety of students when they leave for the time release program. (DE # 50 at 26; DE # 54 at 6.) However, not having a legal obligation in such matters does not mean that defendant and its schools do not have a very strong interest in keeping students safe off campus. Certainly, any reasonable school administration has such an interest. That is in part why schools teach CPR and First Aid, why school districts employ crossing guards, and why teachers and school administrators must report suspicions of child abuse to the authorities. *See* IND. CODE §§ 31-33-5-1; 31-33-5-2.

Magistrate Judge Cosbey notes that "the school apparently sees its role as overseer of school safety as ending . . . when the children exit the school building" and are met by ACHC's teachers. (DE # 50 at 26.) But defendant explains that it does not escort the students further "to avoid excessive entanglement with the program" (DE #53 at 13), and the court does not see how not taking the students directly to the doors of the trailer shows a lack of concern for student safety. After all, nothing prevents defendant's teachers from watching the students walk to the trailer from the doors of the school. While the court appreciates the magistrate judge's point that the school "apparently knows little or nothing about the ACHC teachers" (DE # 50 at 26), it does not believe that this translates into an inconsistent concern for student safety. After all, ACHC has been conducting religious time release classes since the 1960s (DE # 46 at 2) apparently without complaint, so there is at least an inference that students have not been physically endangered during such classes.

Furthermore, the school's property is bound by one side on a river and on another side by a busy road. (*Id.* at 5-6.) Since the school seems to have a large parking lot in front of it, it makes sense that defendant would wish to avoid exposing children to those potential hazards by allowing the trailer on campus. Given the evidence, the court believes that defendant's concern for student safety is not "a sham," or at the very least that there is some question whether its decision to allow ACHC's trailer to sit in the school's parking lot is "motivated wholly by religious considerations." *Books II*, 401 F.3d at 863. Thus, the court holds that defendant passes the first leg of the *Lemon* test.

However, the court strongly agrees with the magistrate judge that defendant fails to survive *Lemon*'s "effects test." In this portion of the *Lemon* test, the court must determine whether allowing ACHC to conduct religious instruction on school property during school hours conveys a "message of endorsement or disapproval." *Freedom from Religion Found.*, 203 F.3d at 493 (internal quotation and citation omitted). When the court finds "that a reasonable person could perceive that a government action conveys the message that religion or a particular religious belief is *favored or preferred*, the Establishment Clause has been violated." *Id.* (emphasis in original).

Here, the court has no doubt that a reasonable observer would perceive that religion, and specifically the variety of Christianity practiced by ACHC, is "favored or preferred" by defendant. Defendant argues that since the trailers lack any religious markings, a reasonable observer would not know religious instruction takes place inside them. (DE # 53 at 13-15.) As the magistrate judge noted (DE # 50 at 27), the reasonable observer in this inquiry must be aware of the history, context and forum where the religious activity is taking place. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 119 (2001) (citing cases). Such a reasonable observer would know that defendant allows religious instruction to take place on school property during the school day, would see the ACHC trailer physically connected to the school (by way of an extension cord), and would notice that it parks in plain sight right next to the main entrance of the school, and is visible to children on one of the school's playgrounds. Further, the fact that the trailers are devoid of religious markings could be seen as increasing the

perception of endorsement, as the trailer may blend in with other school buildings and vehicles. In sum, the court firmly agrees with the magistrate judge's conclusion that allowing the ACHC to locate its trailer in defendant's parking lot, and thus conduct religious instruction of public school students on school grounds during school hours, conveys a message of support and endorsement. Thus, this court concludes that defendant flatly fails to survive the second prong of the *Lemon* test.[5]

Defendant's failure to survive the *Lemon* test, combined with the court's agreement that this case more closely resembles *McCollum* rather than *Zorach*, convince the court that plaintiff's chances of prevailing at trial are quite strong. Thus, the court agrees with the report and recommendation in this respect (*see* DE # 50 at 28), and will overrule defendant's objections on this point.

*F. Balancing Phase: Balance of Harms*

This court now turns to the "balance of harms" consideration. *See Girl Scouts of Manitou Council*, 549 F.3d at 1086. This analysis relies on a "sliding scale" approach, where the more likely a plaintiff is to win, "the less heavily need the balance of harms weigh in his favor." *Id.* (quoting *Roland Mach. Co.*, 749 F.2d at 387). As the court believes that plaintiff is quite likely to succeed on the merits, the court begins this analysis with

---

[5] The report and recommendation rested its conclusion that defendant failed the *Lemon* test on its first two prongs, and failed to address the third. As this court is convinced that defendant fails the *Lemon* test's second prong, and the parties make no arguments about the third prong, the court chooses not to address it here.

plaintiff needing to carry less of a burden than if her chances of success were poor or merely average. *See id.*

The magistrate judge determined that the balance of harms favored plaintiff. (DE # 50 at 29-30.) In its objection, defendant argues that its program "will suffer irreparable harm" if it is enjoined from allowing ACHC to locate its trailers on school grounds, as it would subject students to "possible danger" and "logistical complications." (DE # 53 at 15.) Defendant claims that relocating the trailers might force it to increase the time allotted for the program, thus reducing "secular education time." (*Id.* at 15-16.) Further, the public interest would be harmed, as the program is "popular." (*Id.* at 16.) Plaintiff responds that any First Amendment injury is "unquestionably irreparable harm", and that defendant would not be harmed by the removal of the program, as it does not run the program, but rather merely releases the students. (DE # 54 at 7-8.)

Given the starting point of this analysis, the court agrees with Magistrate Judge Cosbey that the balance of harms favors plaintiff. As courts have repeatedly recognized, the violation of a party's First Amendment rights is irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975) ("any First Amendment infringement that occurs with each passing day is irreparable"); *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("[t]he loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate").

In contrast, the harm to defendant itself is slight. Regarding the "harm" of endangering student safety, the court does not find this point persuasive. Students leave and arrive at school on their own power every day. The court does not understand how the risk to student safety will increase dramatically if students board buses, for example, and are driven a few minutes away, instead of walking directly to a trailer. The only legitimate concern defendant raises on its own behalf is the logistical and educational inconvenience of increasing the time students are released from their regular classes, to account for longer travel times. But a school having to budget a few extra minutes a week surely does not outweigh the "irreparable" harm of a First Amendment violation.

The only remaining factor to consider is the harm accorded to the public interest. *See Girl Scouts of Manitou Council*, 549 F.3d at 1086. Defendant argues that parents who support the program would be harmed (DE # 53 at 16), and ACHC has argued in its amicus brief that it would have to end its program (DE # 34 at 28-29), as no suitable local sites are available (DE # 46 at 6).[6] But this potential harm is mitigated, if not totally outweighed, by the fact that "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y*, 453 F.3d at 859. Magistrate Judge Cosbey noted this holding in his report and recommendation, and defendant's objection

---

[6] The court accepts this conclusion, as the parties stipulated to it, but finds it a bit hard to believe, given that the program apparently enjoys broad support in the community, ACHC's trailer is small enough to be hauled from school to school, and J.S.'s school is located in a rural area.

provides no reason to disregard this precedent. Thus, the court believes the harm to the public interest also weighs in plaintiff's favor— the local community may be harmed if the program ends (although it may just become more expensive and time-consuming to operate), but the public has a strong and established interest in protecting First Amendment rights. Taken with the fact that defendant suffers little harm, and plaintiff suffers "irreparable injury," the balance of harms weigh firmly in favor of plaintiff.

In conclusion, this court determines that plaintiff has satisfied the standards for a preliminary injunction. It therefore will accept the report and recommendation of the magistrate judge on this issue, and overrule defendant's objections.

**V. CONCLUSION**

For the reason explained above, this court **ACCEPTS** the report and recommendation of Magistrate Judge Cosbey (DE # 50). The court therefore **DENIES** defendant's motion to dismiss (DE # 32), and **GRANTS IN PART** and **DENIES IN PART AS MOOT** plaintiff's motion for a preliminary injunction (DE # 13). As Magistrate Judge Cosbey has already held the preliminary injunction hearing (*see* DE # 48), plaintiff's motion to consolidate the preliminary injunction hearing with a trial on the merits (DE # 36) is **DENIED AS MOOT**.

Accordingly, defendant Huntington County Community School Corporation is hereby **ENJOINED** from allowing religious instruction to occur on its property during school instructional time. As plaintiff is not seeking monetary damages, and defendant has neither alleged that it will suffer any financial harm if an injunction is issued nor

requested that any amount be placed in security, the court will not require a preliminary injunction bond. *See* FED. R. CIV. P. 65(c); *Doctor's Assoc., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (preliminary injunction bond not mandatory); *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) (amount of bond rests within discretion of the district court).

**SO ORDERED.**

**DATED:** March 19, 2009

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT